RICHARD C. YOUNG &
CO., LTD., Plaintiff,

v.

Morris LEVENTHAL, D.D.S., M.S., Individually and as Trustee of the Leventhal Family Revocable Trust, and Judith Leventhal, as Trustee of the Leventhal Family Revocable Trust, Defendants.

No. CIV.A.03–112650REK.

United States District Court,
D. Massachusetts.

Dec. 3, 2003.

Michael Unger, Rubin & Rudman LLP, Nur-ul Haq, Rubin and Rudman, LLP, Vincent L. DiCianni, Rubin & Rudman, Boston, MA, for Plaintiff.

Angela H. Magary, Brickley, Sears & Sorett, P.A., John E. Sutherland, Brickley, Sears & Sorett PA, Boston, MA, for Defendants.

**Memorandum and Order**

KEETON, District Judge.

## I. Pending Matters

Pending before this court are matters related to the following filings:

(1) Plaintiff's Motion for Injunctive Relief (Docket No. 2, filed July 3, 2003), with Memorandum in Support of Richard C. Young & Co., Ltd.'s Motion for Injunctive Relief (Docket No. 3, filed July 3, 2003);

(2) Opposition of Leventhals to Plaintiff's Motion for Injunctive Relief and Cross Motion To Dismiss and Memorandum in Support Thereof (Docket No. 8, filed July 30, 2003);

(3) Plaintiff's Opposition to Defendant's Motion To Dismiss (Docket No. 12, filed August 21, 2003);

(4) Plaintiff's Marked Response to Defendants' Proposed Findings of Fact and Rulings of Law (Docket No. 13, filed September 15, 2003);

(5) Defendants' Marked Response to Proposed Findings of Fact and Conclusions of Law of Plaintiff Richard C. Young & Co., Ltd (Docket No. 14, filed September 15, 2003);

(6) Defendants' Marked Response to Additional Proposed Findings of Fact and Rulings of Law of Plaintiff Richard C. Young & Co., Ltd. (Docket No. 15, filed September 17, 2003);

(7) Plaintiff's Marked Response to Defendants' Additional Proposed Findings of Fact and Rulings of Law (Docket No. 16, filed September 17, 2003);

(8) Joint Filing for Non–Jury Hearing (Docket No. 17, filed September 19, 2003);

(9) Plaintiff's Supplemental Memorandum in Support of its Complaint and Motion for Equitable Relief (Docket No. 22, filed September 29, 2003);

(10) Defendants' Additional Exhibits E and F (Docket No. 25, filed October 31, 2003);

(11) Reply of Plaintiff Richard C. Young and Co., Ltd. to the Additional Exhibits Submitted by Defendant Morris Leventhal, D.D.S., M.S. (Docket No. 26, filed November 12, 2003);

(12) Plaintiff's Motion To Clarify and Reconsider (Docket No. 27, filed November 14, 2003);

(13) Defendants' Opposition to Plaintiff's Motion To Clarify and Reconsider (Docket No. 28, filed November 25, 2003).

## II. Relevant Procedural Background

On July 3, 2003, plaintiff filed a Verified Complaint for Injunctive and Declaratory Relief (Docket No. 1). Plaintiff also filed a Motion for Injunctive Relief (Docket No. 2). On July 30, 2003, defendants filed an opposition to plaintiff's motion, coupled with a cross motion to dismiss (Docket No. 8).

On July 31, 2003, this court held a Preliminary Injunction Hearing to address the pending motions. At the hearing, the court issued an Order Regulating Nonjury Hearing (Docket No. 9), in which the court required the parties to exchange proposed findings of fact and conclusions of law. Each party was to mark the proposed findings and conclusions of the opposing party and submit the marked responses to this court for consideration at a hearing scheduled for September 30, 2003. The court's Order also detailed the procedure for submitting evidence at, or before, the September 30 hearing.

In September, the parties filed their marked responses to proposed findings and conclusions (Docket Nos. 13–16). The parties also submitted a joint filing for non-jury hearing that contained the exhibits to be considered by the court as evidence (Docket No. 17). At the hearing on September 30, 2003, after considering the marked responses, the joint filing, and oral submissions, the court informed the parties that it found the record in this case insufficient to render judgment and offered to schedule a second evidentiary hearing. The parties agreed to a hearing on October 21, 2003, which was later rescheduled for November 13, 2003.

On October 31, 2003, defendants filed additional exhibits (Docket No. 25). On November 12, 2003, plaintiff filed a reply to defendants' additional exhibits (Docket No. 26).

After considering the additional filings and oral submissions at the hearing on November 13, 2003, this court ruled against plaintiff. The court informed the parties that it would issue a Memorandum and Order explaining this ruling.

After the hearing, plaintiff filed a motion to clarify and reconsider the court's ruling at the hearing (Docket No. 27). Defendants have responded (Docket No. 28).

## III. Facts

Richard C. Young & Co., Ltd. is a small family-owned Rhode Island corporation with eight employees that is registered as an investment advisor with the United States Securities and Exchange Commission. Its principal office is located in Newport, Rhode Island. Morris Leventhal, D.D.S., M.S. is an individual who resides in Ventura, California. He is 84 years old, retired, and suffers from severe diabetes. His medical condition requires constant vigilance, including a 24–hour insulin pump. Dr. Leventhal is a Trustee of the Leventhal Family Revocable Trust. Judith Leventhal also is a Trustee of the Leventhal Family Revocable Trust. She resides in Ventura, California.

Defendant Dr. Leventhal has utilized Young & Co.'s services for over ten years. On March 11, 2002, Dr. Leventhal execut-

ed an investment management agreement with Young & Co., which executed the agreement on March 26, 2002. The agreement contained an arbitration clause. The arbitration clause states as follows:

**Arbitration.** In the event of any disagreement between us in connection with this Agreement we will meet in good faith to attempt to resolve such disagreement. If we are unable to resolve the disagreement within 30 days after receipt of written notice by either party from the other that such a disagreement exists, the disagreement will be submitted for arbitration to the American Arbitration Association in Boston, Massachusetts, in accordance with the Rules of Commercial Arbitration of the Association. There is no obligation to arbitrate changes in or additions to the terms of this Agreement, and no arbitrator will have the power to add to or subtract from the terms of this Agreement. Each of us will bear his own costs. Judgment may be entered in any court within the State of Rhode Island.

(Exhibit 4 to Joint Filing, Docket No. 17.)

On May 16, 2002, Dr. Leventhal and his wife Judith, as Trustees of the Leventhal Family Revocable Trust, entered into an agreement with Young & Co., which signed the agreement on June 6, 2002. This agreement contained an arbitration clause identical in language to the arbitration clause discussed above. Both the March 2002 investment management agreement and the May 2002 trust management agreement state that the signor has read and understands the agreement and that the signor acknowledges that the agreement is binding between him and Young & Co. Both agreements also state that Rhode Island law governs.

At some point after June 6, 2002, Dr. Leventhal took exception to Young & Co.'s handling of his trust management account. On December 26, 2002, Dr. Leventhal wrote a notice of claim letter to Young & Co. in an attempt to resolve his dispute, in accordance with the first sentence of the arbitration clause. On January 14, 2003, Dr. Leventhal wrote a second letter to Young & Co. On February 3, 2003, Dr. Leventhal instituted an arbitration proceeding in California against Young & Co. with the American Arbitration Association ("AAA"). Dr. Leventhal seeks in his arbitration claim damages of $59,703.56 plus interest and expenses.

Upon receipt of the arbitration claim, Young & Co. objected to the arbitration being held in California, saying Young & Co. will have to call three employees away from work to attend the arbitration hearing. AAA requested and received submissions regarding determination of the locale. AAA concluded that the arbitration should go forward in California. Because of this suit, the arbitration has been delayed from its scheduled start.

### IV. Contentions of the Parties

Plaintiff Richard C. Young & Co., Ltd. contends that the arbitration clause at issue in this case contains a forum-selection clause that identifies Boston, Massachusetts as the chosen venue for arbitration. Plaintiff asks this court to enforce the alleged forum-selection clause by granting relief on two counts. Plaintiff seeks injunctive relief (Count I) that includes enjoining the pending California arbitration and compelling arbitration in Massachusetts. Plaintiff also seeks declaratory relief (Count II) that includes declaring that the alleged forum-selection clause is valid and enforceable as a clause compelling arbitration to occur in Massachusetts. Plaintiff's motion for injunctive relief asks the court to enjoin the pending California arbitration and to issue an order transferring the arbitration to Massachusetts.

Defendants offer a bevy of counter-arguments, as well as numerous arguments to dismiss on procedural grounds.

## V. Ruling at the Hearing of November 12, 2003

### A. Introduction

At the most recent hearing in this case on November 13, 2003, I ruled against plaintiff. I informed the parties that I would issue a Memorandum and Order providing further explanation of my ruling. I give that explanation here.

### B. Completeness of the Record

At an evidentiary hearing on September 30, 2003, I informed the parties that I found the record in this case insufficient to render judgment. At that time, I presented the parties with an opportunity for a second evidentiary hearing. Both plaintiff and defendants agreed to the hearing, but both also expressed a belief that the record required no additional submissions.

For the second evidentiary hearing on November 13, 2003, defendants submitted two additional exhibits and plaintiff submitted one additional affidavit. Both plaintiff and defendants reiterated their confidence in the completeness of the record.

I remain unconvinced of the completeness of the record, but conclude that the parties have been granted ample opportunity to supplement the record. I find that the parties accept the record as it stands and that judgment may be rendered at this time without risk of prejudice to either party.

### C. Consolidation of Plaintiff's Motion for Injunctive Relief with Disposition of the Case

As a procedural matter, plaintiff has moved for *preliminary* injunction. Yet plaintiff fails completely to address or even mention any of the usual legal standards for preliminary injunction.

In trial courts within the First Circuit, ordinarily the applicable standard for deciding motions for preliminary injunction requires the trial court to consider whether the party seeking preliminary injunction has met its burden of showing (1) that plaintiff has a likelihood of success on the merits; (2) that irreparable harm is likely to occur if the injunction is not granted; (3) that the harm likely to occur outweighs any hardship that would be inflicted on the other party by an injunction; and (4) that the public interest will not be adversely affected by the injunction. *See Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981); *see also Strahan v. Coxe*, 127 F.3d 155, 160 (1st Cir.1997), *cert. denied* 525 U.S. 830, 119 S.Ct. 81, 142 L.Ed.2d 63 (1998).

Defendants do argue briefly that plaintiff has not met its burden of demonstrating a likelihood of irreparable harm, but not until one of their later filings. Defendants fail even to mention the remaining three elements ordinarily required for preliminary injunction.

In these circumstances, it would be appropriate for me simply to deny plaintiff's motion for injunctive relief. It seems somewhat implausible, however, that the parties willfully neglected the legal standards required for preliminary injunction. Rather, because the merits of plaintiff's motion overlap significantly with the merits of the underlying case, it is more reasonable to conclude that the parties have treated plaintiff's motion as one for an accelerated consideration of the merits of the case. Thus, the parties did not brief the questions associated with preliminary injunction because they did not view plaintiff's motion as one for preliminary injunction.

In fact, the parties have proceeded before this court in oral argument and in written submissions as if seeking a determination of final judgment. For example, plaintiff has filed a Supplemental Memorandum in Support of Its *Complaint* and Motion for Equitable Relief (Docket No. 22). Moreover, in addressing the merits of the motion, the parties have briefed the merits of the underlying case.

For these reasons, I conclude that simply denying plaintiff's motion would unnecessarily prolong proceedings in this case. Rather, I deny plaintiff's motion for injunctive relief in the Order below and also conclude here that final disposition of the case is appropriate at this time. *Cf.* Fed. R.Civ.P. 65(a)(2) (allowing a district court to "order the trial of the action on the merits to be advanced and consolidated with the hearing of the application" for preliminary injunction).

### D. Disposition of the Case

At the hearing on November 13, 2003, defendants directed the court's attention to a letter that indicates the American Arbitration Association has made a determination as to the venue for arbitration between plaintiff and defendants in this case. (*See* Letter of April 17, 2003 from Robert Hall to Morris Leventhal & Michael Unger, Exhibit 10 to Docket no. 21.) After consideration of the letter, I concluded that an arbitrator had made a determination as to the venue for arbitration. Because a court may review the determination of an arbitrator only in very narrow circumstances, which do not exist here, I ruled that this court cannot act in this case.

Accordingly, I concluded at the hearing on November 13, 2003, that I should deny Counts I and II, and order final judgment for the defendants.

### E. Plaintiff's Motion for Reconsideration

After the hearing on November 13, 2003, however, plaintiff filed a motion to clarify and reconsider. Plaintiff contends that "the basis of [my] ruling was misfounded." (Pl.'s Mot. to Clarify & Reconsider, Docket No. 27, at 2.) According to plaintiff, an arbitrator could not have made a determination as to the venue for arbitration; the letter I considered at the November 13 hearing states that "[t]he [American Arbitration] Association is currently in the process of appointing an arbitrator to hear this dispute." (Docket No. 21.) Plaintiff suggests that the letter indicates an American Arbitration Association case manager, not an arbitrator, made the determination as to the venue for arbitration.

Plaintiff's argument is persuasive. The letter on the basis of which I concluded that an arbitrator made a determination as to venue does not support that conclusion. The letter clearly indicates that an arbitrator had yet to be appointed at the time a determination regarding venue was made. Indeed, the letter states that "[a]fter careful consideration of the parties' contentions, *the Association* has determined the administration of this matter shall be conducted by the Western Case Management Center and hearings will be held in Los Angeles, California." (*Id.* (emphasis added).)

I conclude that I did base my Order at the hearing on November 13, 2003 upon an erroneous conclusion.

In opposition to plaintiff's motion, defendants contend that my erroneous conclusion does not affect my Order. Defendants assert that "[p]laintiff's argument must fail … because AAA does and should enjoy immunity with respect to its administrative functions to the same extent as its arbitrators do in serving as

arbitrators." (Defs.' Opp. to Pl.'s Mot. to Clarify & Reconsider, Docket No. 28, at 1.) In support of this proposition, defendants cite the following from *New England Cleaning Services, Inc. v. American Arbitration Association*, 199 F.3d 542 (1st Cir.1999): "[A]rbitral immunity is essential to protect decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants.... [O]rganizations that sponsor arbitrations, as well as arbitrators themselves, enjoy this immunity." *Id.* at 545.

I am not persuaded by defendants' contention for two reasons. First, defendants' argument that my erroneous conclusion does not affect my Order has no bearing on a motion to *reconsider.* My decision to reconsider is based solely on my determination that I relied on an erroneous premise that an arbitrator had made a decision about venue. Defendants do not dispute that I have relied on an erroneous premise. Defendants' argument may, if persuasive, be a reason to make the same Order after reconsideration, but I must nevertheless first reconsider.

Second, defendants misquote the First Circuit opinion upon which they rely. I give the full quotation here, emphasizing the portions that the defendants omitted: "*In proper circumstances,* organizations that sponsor arbitrations, as well as arbitrators themselves, enjoy this immunity *from civil liability.*" *Id.* This case, which is the sole authority cited by defendants, offers no support for defendants' proposition that AAA does and should enjoy immunity *from judicial review* in the same way that arbitrators enjoy such immunity. Immunity from *judicial review* is fundamentally different from immunity from *civil liability.*

I must and do now reconsider my ruling. Plaintiff's Motion To Clarify and Reconsider (Docket No. 27) is ALLOWED.

**F. Reconsideration of the Ruling of November 13, 2003**

■ I made my ruling of November 13, 2003 solely because I had concluded that an arbitrator had already made a determination of the arbitration venue. I have now concluded that no arbitrator made any determination of the arbitration venue. After reconsideration, I rule that, no arbitrator having made a determination on venue, I am not preempted by an arbitrator's decision. I do not, however, revise my conclusions above regarding the completeness of the record, the denial of plaintiff's motion for injunctive relief, or the appropriateness of final disposition at this time.

In light of these rulings, I consider in the remainder of this Memorandum and Order whether and how this court should act.

**VI. Disposition of This Case**

**A. This Court Has Authority To Interpret the Forum–Selection Clause**

Defendants contend that this court lacks authority to interpret the alleged forum-selection clause in the arbitration agreement, even if an arbitrator has not preempted this court. Relying primarily on two recent United States Supreme Court cases, defendants assert that courts may interpret arbitration agreements only in narrow circumstances. Specifically, defendants contend that *Green Tree Financial Corp. v. Bazzle*, — U.S. —, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003), and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), limit courts to interpreting only questions of arbitrability. According to defendants, the question here-where an agreed-to arbitration should occur is a question of arbitration procedure, which

the cases indicate should be left for arbitrators to determine.

*Howsam* and *Green Tree* do hold that some arbitration matters should be decided by courts and that most arbitration matters should be decided by arbitrators. The Court of Appeals for the First Circuit recently discussed *Howsam:*

> In *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557–58, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Court distinguished between questions of arbitrability, which are committed to the courts, and questions of procedure, which should be left to the arbitrator, even if they "grow out of the dispute and bear upon its final disposition." *Howsam* clarifies the distinction between arbitrability and procedural questions, emphasizing the broad scope of the latter.

*Shaw's Supermarkets, Inc. v. United Food & Commercial Workers Union, Local 791, AFL–CIO,* 321 F.3d 251, 254 (1st Cir.2003).

In *Green Tree,* the Court stated:

> In certain limited circumstances, courts assume that the parties intended the courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of "clea[r] and unmistakabl[e]" evidence to the contrary). These limited instances typically involve matters of a kind that "contracting parties would likely have expected a court" to decide. They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applied to a certain type of controversy.

—— U.S. at ——, 123 S.Ct. at 2407 (internal citations omitted). The Court also characterized questions of arbitrability as "whether [the parties] agreed to arbitrate" and questions of arbitration procedure as "what kind of arbitration proceeding the parties agreed to." *Id.*

The venue in which an agreed-to arbitration occurs may be said to relate to "what kind of arbitration proceeding" the parties agreed to, although *Howsam* and *Green Tree* notably do not make so explicit a statement. It may be argued that under the guidance that *Howsam* and *Green Tree* provide, this court has no authority to interpret the alleged forum-selection clause in the arbitration agreement.

The Court of Appeals for the Second Circuit, however, has rejected this argument. In *Bear, Stearns & Co., Inc. v. Bennett,* 938 F.2d 31 (2d Cir.1991), the court stated:

> The district court ... [held] in substance that the hearing venue was a procedural matter to be determined by the AAA, not the court. We believe that the clear and explicit contractual terms at issue herein cannot be disregarded so readily.

> In the almost two decades that have elapsed since the Supreme Court decided *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the prima facie validity of forum-selection clauses has been recognized consistently by both the Supreme Court and this court. Of particular significance in the instance case is the fact that the *Bremen* holding has been applied to forum-selection provisions in arbitration agreements. *See, e.g., Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)....

> ....

> We reject [appellee's] argument that the "situs of the suit" should be determined by the arbitrators or the AAA rather than by the district court. Where there is a valid agreement for arbitration, Congress has directed the district courts to order that arbitration proceed "in ac-

cordance with the terms of the agreement." 9 U.S.C. § 4.

*Id.* at 32 (some internal citations omitted).

The Courts of Appeals for the First and Seventh Circuits also have declined to leave to arbitrators the interpretation of a forum-selection clause in an arbitration agreement, stating that the Federal Arbitration Act compels *a court* to interpret and enforce such forum-selection clauses. According to the Seventh Circuit, "under the statute, the court must order the parties to arbitrate 'in accordance with the terms of the agreement'; one term of the agreement is the parties' forum selection clause." *Snyder v. Smith,* 736 F.2d 409, 418 (7th Cir.1984) *overruled on other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir.1998); *see also KKW Enterps., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.,* 184 F.3d 42, 50 (1st Cir.1999) (citing *Snyder*).

Finally, the Court of Appeals for the Eleventh Circuit has interpreted a forum-selection clause in an arbitration agreement, rather than deferring to an arbitrator. *McCullagh v. Dean Witter Reynolds, Inc.,* 177 F.3d 1307 (11th Cir.1999). Unlike the First, Second, and Seventh Circuits, the Eleventh Circuit does not state that courts *must* interpret forum-selection clauses that are in arbitration agreements. But the court emphasizes that courts are not without power to interpret. The court states that deferring to the AAA or an arbitrator *may* be appropriate, but only because "[t]he arbitrators would presumably enforce the venue-selection clause in precisely the same way that a court would." *Id.* at 1310.

■ I conclude that most Courts of Appeals addressing the issue indicate that courts may, and probably must, interpret a forum-selection clause in an arbitration agreement. They observe that the distinction between questions of arbitrability and

questions of arbitration procedure is a basis for limiting a court's authority to interpret an arbitration agreement, but that this limitation does not apply here. I conclude that I have the authority to, and that I should, interpret the alleged forum-selection clause in this case.

## B. Interpretation of the Alleged Forum–Selection Clause

### 1. Ambiguity of the Clause

The parties are at odds over alleged ambiguity of the forum-selection clause. Plaintiff and defendants both approach this issue by analogy. Each party cites a case that interprets a provision in the American Stock Exchange ("AMEX") Constitution. The AMEX provision reads: "the customer may elect to arbitrate before the American Arbitration Association in the City of New York." *McCullagh,* 177 F.3d at 1309 (quotation marks omitted). The provision seems analogous in structure to the clause at issue in this case: "the disagreement will be submitted for arbitration to the American Arbitration Association in Boston, Massachusetts."

Defendants proffer that the Court of Appeals for the Eleventh Circuit found the AMEX provision ambiguous. *Id.* at 1309. Defendants contend that by analogy, therefore, I should find the clause in this case ambiguous. Plaintiff counters that the Court of Appeals for the Second Circuit found the AMEX provision unambiguous. *PaineWebber, Inc. v. Rutherford,* 903 F.2d 106, 109 (2d Cir.1990) (citations omitted). Plaintiff contends that by analogy, therefore, I should find the clause in this case unambiguous.

I am not persuaded by either plaintiff or defendants. The AMEX provision differs sufficiently in language from the clause in this case to render the cited cases irrelevant to my consideration here.

In particular, the language in the clause here involves "submit[ting]" a claim for arbitration rather than "arbitrat[ing] before."

I observe two plausible readings of the alleged forum-selection clause. The phrase "in Boston, Massachusetts" can modify either "arbitration" or "American Arbitration Association." The clause could read:

(1) "the disagreement will be submitted for arbitration to the American Arbitration Association"—"in Boston, Massachusetts" or

(2) "the disagreement will be submitted for arbitration to"—"the American Arbitration Association in Boston, Massachusetts."

The first reading indicates arbitration is to occur in Boston, Massachusetts. The second reading, however, suggests only that the disagreement will be *submitted* for arbitration to the particular AAA entity that is in Boston. The second reading creates no obligation on the part of either the parties or the particular AAA entity that is in Boston to arbitrate the matter in Boston.

I conclude that these two plausible readings of the alleged forum-selection clause convey different meanings. I determine therefore that the clause is ambiguous.

## 2. The Underlying Investment Agreements Are Contracts of Adhesion

Defendants contend that the interpretation of the ambiguous clause necessitates determining whether the underlying agreement is a contract of adhesion. Citing *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1 (1st Cir.1999), and *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), defendants assert that an ambiguous clause in a

contract of adhesion must be interpreted against the drafter.

Defendants, however, cite non-authoritative law. The parties agree that Rhode Island contract law applies in this case. But in *Rosenberg,* the Court of Appeals for the First Circuit discussed contracts of adhesion under Massachusetts law. 170 F.3d at 19 n. 16. In *Mastrobuono,* the Supreme Court noted the "common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." 514 U.S. at 62, 115 S.Ct. 1212. I am applying neither Massachusetts contract law nor common-law contract law.

█ Nevertheless, defendants' point is sound. Under Rhode Island law, because an insurance contract is "essentially a contract of adhesion," language in insurance contracts that is "ambiguous or susceptible to multiple interpretations ... will be strictly construed in favor of the insured and against the insurer," *Mallane v. Holyoke Mutual Ins. Co.,* 658 A.2d 18, 20 (R.I.1995). *Bush v. Nationwide Mutual Ins. Co.,* 448 A.2d 782, 784 (R.I.1982); *see also Clauson v. New England Ins. Co.,* 254 F.3d 331, 338–39 (1st Cir.2001). Thus, I conclude I should construe ambiguous language against the plaintiff and in favor of the defendant if the underlying agreement is a contract of adhesion.

The Rhode Island Supreme Court has defined "contract of adhesion" as "a phrase descriptive of a standard form printed contract prepared by one party and submitted to another on a take-it-or-leave-it basis. Usually, there is no true equality of bargaining power between the parties." *Pickering v. American Employers Ins. Co.,* 109 R.I. 143, 282 A.2d 584 (1971).

The underlying investment agreements in question here appear plainly on their face to be standard form printed contracts prepared by plaintiff and submitted to de-

fendants on a take-it-or-leave-it basis. (*See* Exhibits 4 & 5 to Docket No. 17.) The contracts consist mostly of boilerplate and vast quantities of fine print. Plaintiff offers no evidence to demonstrate otherwise. I am not persuaded by plaintiff's unsupported assertion that defendants understood the agreements and chose not to object to or alter the agreements. Plaintiff also contended at oral argument that Dr. Leventhal's attempts to comply with the arbitration clause in the investment agreements demonstrate that the agreements are not contracts of adhesion. This argument is without relevance; defendants' post-hoc attempts to comply do not in fact alter the agreements that were made.

■ I find that the underlying agreements are contracts of adhesion. I therefore construe the ambiguous language against the plaintiff and in favor of the defendants.

### 3. Construing the Alleged Forum–Selection Clause

Plaintiff seeks to establish that the clause in question is a forum-selection clause. Of the two plausible ways to read the alleged forum-selection clause, the second interpretation least resembles a forum-selection clause. I thus follow the second reading in interpreting the clause in question.

■ I find that the clause "the disagreement will be submitted for arbitration to the American Arbitration Association in Boston, Massachusetts" does not require the defendants to arbitrate in Boston. Rather, the clause requires the defendants only to submit the request for arbitration to the Boston office of the American Arbitration Association.

### C. Defendants' Cross Motion To Dismiss

#### 1. Introduction

Defendants have mixed in with their substantive contentions a number of procedural arguments. Defendants initially offered these arguments regarding subject matter jurisdiction, personal jurisdiction, and venue as a cross motion to dismiss. I consider that motion here.

#### 2. Subject Matter Jurisdiction

■ Defendants correctly contend that the Federal Arbitration Act does not create a basis for federal subject matter jurisdiction. *Bull HN Information Systems, Inc. v. Hutson,* 229 F.3d 321, 328 (1st Cir.2000); *see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 ("The Arbitration Act . . . does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. IV) or otherwise.").

Plaintiff asserts that this court may exercise federal diversity jurisdiction under 28 U.S.C. § 1332. The parties in this case are completely diverse. Defendants, however, contest plaintiff's assertion that the amount-in-controversy meets the $75,000 statutory minimum for federal diversity jurisdiction.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n.,* 432 U.S. 333, 347–48, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The "value"

> has historically been calculated by assessing the value to the plaintiffs of conducting their affairs free from the restriction or imposition which they seek to restrain . . . .

Over time, a growing number of courts have been willing to discard a strict "plaintiff's viewpoint" rule where common sense or strong practical considerations dictate utilization of a different modality. Thus, in certain instances involving declaratory or injunctive relief, courts have occasionally found diversity jurisdiction if, from the viewpoint of *either* plaintiff or defendant, more than the statutory amount could fairly be said to be in controversy.

*Ferris v. General Dynamics Corp.*, 645 F.Supp. 1354, 1362 (D.R.I.1986).

As the parties note, the Court of Appeals for the First Circuit has yet to determine the permissibility of considering the "defendant's viewpoint." The lack of specific guidance in First Circuit decisions, however, does not pose a problem here. Plaintiff appears not to rely on defendants' viewpoint to meet the amount-in-controversy. Plaintiff discusses only the details of its viewpoint and then simply concludes that the defendants' viewpoint would total an equal amount. Moreover, I find that defendants' viewpoint actually would total a lesser amount than plaintiff's viewpoint.

█ I look to the plaintiff's viewpoint for determining the amount-in-controversy.

Plaintiff's viewpoint of the "value of the object of the litigation" is "the monetary harms the plaintiff will incur without court relief." Erwin Chermerinsky, *Federal Jurisdiction* 306 (4th ed.2003). Following this rule, plaintiff contends that the amount-in-controversy should be calculated by adding the amount in dispute in the underlying arbitration ($59,703.56 plus interest and expenses) to the cost to the plaintiff of arbitrating in California.

Defendants offer several counter-arguments. First, defendants argue that the dispute in the underlying arbitration is not "the object of the litigation." Courts that have considered motions to enjoin or compel arbitration, however, have ruled otherwise. "In considering the jurisdictional amount requirement the court should look through to the possible award resulting from the desired arbitration, since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award." *Davenport v. Procter & Gamble Manufacturing Co.*, 241 F.2d 511, 514 (2d Cir.1957); *see also Delta Financial Corp. v. Paul D. Comanduras & Assoc.*, 973 F.2d 301, 304 (4th Cir.1992) (following *Davenport*); *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1068 (3d Cir.1987) (same). The Court of Appeals for the Fifth Circuit has applied the *Davenport* "look-through" logic to a suit enjoining an arbitration provision, finding the claims "sufficiently analogous to a motion to compel arbitration." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256–57 (5th Cir.1996).

In addition, a United States District Court has looked to the amount of the underlying arbitration in determining the amount-in-controversy for a case similar to the one here, in which the plaintiff sought declaratory judgment of the situs of the arbitration. *M.C. Construction Corp. v. Gray Co.*, 17 F.Supp.2d 541, 545–46 (W.D.Va.1998).

I conclude that I should include the amount in dispute in the underlying arbitration ($59,703.56 plus interest and expenses) in my assessment of the amount-in-controversy.

Second, defendants argue that the cost to the plaintiff of arbitrating in California cannot be included in the amount-in-controversy. They contend that 28 U.S.C. § 1332 prohibits including "interest and costs" when calculating the amount-in-controversy.

Defendants, however, misunderstand the meaning of "interest and costs." The statute prohibits the inclusion of costs from the *immediate* case. In this instance, plaintiff is prohibited from including the costs of pursuing the action *here in this court.* The statute aims to mitigate the risk of a party's altering the timing or costs of a suit in order to meet the amount-in-controversy for that same suit. This risk does not arise from including the costs to the plaintiff of arbitration in California, which is a different proceeding.

Moreover, costs that would be incurred without court relief, such as the costs of arbitrating in California, plainly fit the definition of the plaintiff's viewpoint of the amount-in-controversy, which as stated before is "monetary harms the plaintiff will incur without court relief."

I conclude that plaintiff may include costs incurred in the underlying arbitration in the amount-in-controversy.

Third, defendants argue that plaintiff incorrectly asserts that all the costs of arbitrating in California should be included in the amount-in-controversy. Plaintiff seeks in this case not to enjoin arbitration completely, but to enjoin the California arbitration and to compel arbitration in Massachusetts. The harm · the plaintiff will incur without court relief therefore includes only the additional expense plaintiff would incur by arbitrating in California rather than arbitrating in Massachusetts.

▮ Defendants' argument is persuasive. I conclude that the amount-in-controversy includes any costs the plaintiff would incur to arbitrate in California minus the costs the plaintiff would incur to arbitrate in Massachusetts.

According to the Supreme Court, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Saint*

*Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

Plaintiff has offered an estimate of at least $20,000 in costs and $10,000 in three days' lost revenue that would be incurred to arbitrate in California. Adding these numbers to the amount in dispute in the underlying arbitration totals nearly $90,000. From this number, I must subtract the costs and lost revenue that would be incurred to arbitrate in Massachusetts.

Plaintiff has not offered estimates of the costs and lost revenue that would be incurred to arbitrate in Massachusetts. Even with such estimates, however, I could not determine to a legal certainty that the amount-in-controversy would not total more than $75,000.

I conclude that this court has federal diversity jurisdiction under 28 U.S.C. § 1332.

## 2. Personal Jurisdiction

Defendants contend that this court does not have personal jurisdiction under the Massachusetts Long Arm Statute. This contention may be sound, but personal jurisdiction may be established in other ways.

Plaintiff correctly offers the First Circuit's opinion in *Unionmutual Stock Life Ins. Co. of America v. Beneficial Life Ins. Co.*, 774 F.2d 524 (1st Cir.1985). In a suit seeking to compel arbitration, the First Circuit held that an agreement to arbitrate in a particular forum amounted to implied consent to the jurisdiction of that forum's courts. *Id.* at 526–28. The court explained: "The essential factor is that the parties agreed to arbitrate in a particular forum and thus may be expected to have consented to the jurisdiction of that forum's courts in a request for an order compelling arbitration." *Id.* at 528.

 I have not found the alleged forum-selection clause here to be a binding agreement to arbitrate in Massachusetts. I have found, however, that it is a binding agreement to submit any request for arbitration to a Massachusetts entity. The situation here is sufficiently analogous to apply the First Circuit's reasoning from *Unionmutual.* The essential factor is that the parties agreed that any request for arbitration would be made in Massachusetts. Thus the parties may be expected to have consented to the jurisdiction of that forum's courts in a request for an order enforcing that agreement.

I conclude that this court has personal jurisdiction over defendants.

Plaintiff also counters defendants' objection to personal jurisdiction by contending that defendants consented to service. This argument by plaintiff is now extraneous. I note nevertheless that plaintiff's argument is mistaken. Personal jurisdiction does not necessarily follow from consent to or waiver of service. *See* Fed.R.Civ.P. 4(d)(1) ("A defendant who waives service of a summons does not thereby waive any objection to the venue or to the jurisdiction of the court over the person of the defendant.").

### 3. Venue

Defendants argue that under 28 U.S.C. § 1391, this court is not the proper venue in which to bring this case. This argument is valid as far as it goes, but venue may be established in other ways.

The Federal Arbitration Act provides that:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the matter provided for in such agreement.

9 U.S.C. § 4 (2000). Section 4 has been interpreted "to extend to parties whose grievance is the other party's failure to arbitrate under the terms of the arbitration agreement." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323, 327 (7th Cir.1995). Because this court has subject matter jurisdiction, this court is the proper venue under section 4.

Furthermore, under section 4, this court may be the *only* proper venue for this action. Section 4 also states: "The hearing and proceedings ... shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Interpreting this provision, the Court of Appeals for the Seventh Circuit has "concluded that where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." *Lauer,* 49 F.3d at 327.

 I have not found the alleged forum-selection clause here to be a binding agreement to arbitrate in Massachusetts. I have found, however, that it is a binding agreement to submit any request for arbitration to a Massachusetts entity. The situation here is sufficiently analogous to a forum-selection clause to apply the Seventh Circuit's reasoning from *Lauer.* Because the alleged forum-selection clause is a binding agreement that any request for arbitration be submitted in Massachusetts, this district is the district in which the petition for an order to enforce the clause

should be filed. Accordingly, this district is the only district that may issue a section 4 order.

### 4. Conclusion

In the Order below, defendants' cross motion to dismiss is denied.

### D. Final Disposition

I have found the alleged forum-selection clause here to be a binding agreement only to submit any request for arbitration to the Boston office of the American Arbitration Association. Accordingly, I deny Count II, plaintiff's request for a declaration that the alleged forum-selection clause is valid and enforceable as a clause compelling arbitration to occur in Massachusetts.

The record shows and defendants concede that defendants did not submit the request for arbitration to the Boston office of the American Arbitration Association. Accordingly, in the Final Judgment I grant Count I, plaintiff's request for injunctive relief, to the extent that the defendants are enjoined from proceeding with arbitration in California and are compelled to submit any request for arbitration under the agreements in question to the Boston office of the AAA.

The Federal Arbitration Act grants a district court the power to compel parties to an arbitration agreement to arbitrate according to the terms of the agreement, if all parties are subject to in personam jurisdiction. The American Arbitration Association, however, is not a party to the proceedings in this court. In the Final Judgment, therefore, I deny Count I as to the requests to enjoin and compel the American Arbitration Association.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Plaintiff's Motion for Injunctive Relief (Docket No. 2) is DENIED.

(2) Plaintiff's Motion to Clarify and Reconsider (Docket No. 27) has been ALLOWED.

(3) Opposition of Leventhals to Plaintiff's Motion for Injunctive Relief and Cross Motion to Dismiss and Memorandum in Support Thereof (Docket No. 8) is DENIED to the extent explained in this Memorandum.

(4) The clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

For the reasons explained in the Memorandum and Order of this date, it is ORDERED:

Morris Leventhal, D.D.S., M.S., individually and as Trustee of the Leventhal Family Revocable Trust, and Judith Leventhal, as Trustee of the Leventhal Family Revocable Trust, are hereby enjoined from pursuing the arbitration of their dispute with Richard C. Young & Co., Ltd. that was filed pursuant to their investment agreement of May 2002 with Richard C. Young & Co., Ltd. and that is currently pending before the American Arbitration Association in California. Morris Leventhal, D.D.S., M.S., individually and as Trustee of the Leventhal Family Revocable Trust, and Judith Leventhal, as Trustee of the Leventhal Family Revocable Trust, are hereby compelled to submit to the Boston office of the American Arbitration Association any future requests for arbitration that are made pursuant to the investment agreement of May 2002 with Richard C. Young & Co., Ltd., or the investment agreement of March 2002 with Richard C. Young & Co., Ltd.

### Final Judgment

For the reasons explained in the Memorandum and Order of this date, it is ORDERED:

Morris Leventhal, D.D.S., M.S., individually and as Trustee of the Leventhal Family Revocable Trust, and Judith Leventhal, as Trustee of the Leventhal Family Revocable Trust, are hereby enjoined from pursuing the arbitration of their dispute with Richard C. Young & Co., Ltd. that was filed pursuant to their investment agreement of May 2002 with Richard C. Young & Co., Ltd. and that is currently pending before the American Arbitration Association in California. Morris Leventhal, D.D.S., M.S., individually and as Trustee of the Leventhal Family Revocable Trust, and Judith Leventhal, as Trustee of the Leventhal Family Revocable Trust, are hereby compelled to submit to the Boston office of the American Arbitration Association any future requests for arbitration that are made pursuant to the investment agreement of May 2002 with Richard C. Young & Co., Ltd., or the investment agreement of March 2002 with Richard C. Young & Co., Ltd.