**NEW ENGLAND CLEANING SERVICES, INC., Plaintiff, Appellant,**

v.

**AMERICAN ARBITRATION ASSOCIATION, Defendant, Appellee.**

No. 99–1146.

United States Court of Appeals, First Circuit.

Heard Sept. 17, 1999.

Decided Dec. 20, 1999.

Richard D. Wayne with whom John P. Martin and Hinckley, Allen & Snyder were on brief for appellant, New England Cleaning Services, Inc.

Kay H. Hodge with whom Ronald M. Jacobs and Stonehan, Chandler & Miller were on brief for appellee, American Arbitration Association.

Before BOUDIN, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Plaintiff-appellant New England Cleaning Services, Inc. ("NECS") appeals from the district court's dismissal of its complaint for an injunction and damages against defendant-appellee American Arbitration Association ("the AAA"). NECS brought its complaint against the AAA as part of its action for declaratory relief against Local 254, Service Employees International Union, AFL–CIO ("SEIU" or "the union"), seeking to forestall the latter from proceeding to arbitrate a labor dispute with NECS.[1] NECS contends that the AAA, by processing the SEIU's demand for arbitration despite NECS's protestations that there was then in force no valid agreement to arbitrate (a position subsequently upheld by the district court), violated various provisions of Massachusetts law. The district court allowed the AAA's motion to dismiss NECS's complaint on the ground that the AAA's actions were protected by arbitral immunity. We affirm.

## BACKGROUND

We take the following facts from NECS's complaint and attached documents. *See LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 509 (1st Cir.1998).

NECS is a maintenance and service provider. On March 14, 1994, it entered into a collective bargaining agreement ("the Agreement") with the SEIU. The Agreement contained a section titled "Grievances," which described a four-step proce-

---

1. NECS sued both the SEIU and the AAA under the federal question jurisdiction, premised on NECS's underlying Taft–Hartley Act claim against the SEIU. NECS prevailed in the district court on its contention, inter alia, that the collective bargaining agreement formerly existing between the parties had been effectively terminated prior to the union's demand for arbitration, vitiating the arbitration clause. The SEIU's appeal from the district court's determination that NECS had terminated the agreement was argued to us on the same day as the instant appeal, and is the subject of a separate opinion issued today. *See New England Cleaning Services, Inc. v. Services Employees International Union, Local 254, AFL–CIO,* 199 F.3d 537 (1st Cir.1999).

dure governing "[a]ll disputes arising out of this Agreement or its application to any situation that may arise during the term of this Agreement." The final step of the grievance procedure provided for binding arbitration under the rules of the AAA, a not-for-profit organization that provides voluntary dispute resolution services.

By its terms, the Agreement was effective until August 31, 1996, and would continue in effect thereafter until terminated by either party. A party could terminate the Agreement if it did so in writing more than 60 days before the stated expiration date. On or about September 6, 1994, NECS sent the SEIU a letter stating that it was terminating the Agreement.

Beginning in early June, 1998, the SEIU filed several grievances with NECS. NECS denied the grievances as untimely, arguing that it had effectively terminated the Agreement in 1994. On August 3, 1998, the SEIU filed a demand for arbitration with the AAA, claiming that NECS had "improperly" terminated the Agreement. On August 7, having received notice of this demand from the AAA, NECS wrote a letter to the AAA stating that no collective bargaining agreement between NECS and the SEIU existed, and that therefore the AAA lacked jurisdiction or authority over NECS. NECS attached to this letter copies of the Agreement and its termination letter of September 6, 1994.

The AAA continued to process the SEIU's demand, however, and sent NECS an invoice for services rendered in connection therewith. Despite NECS's written warning that it planned to file a complaint in the federal district court, the AAA continued to proceed toward arbitration, and scheduled a hearing on the SEIU's demand.

On September 17, 1998, NECS filed a complaint in the district court against the SEIU and the AAA. Against the SEIU, it sought a declaration pursuant to section 301 of the Taft–Hartley Act, 29 U.S.C. § 185, that there was no collective bargaining agreement in force between NECS

and the SEIU and that NECS was not obligated to submit to arbitration. Against the AAA, NECS sought an injunction preventing further processing of the demand for arbitration as well as damages under M.G.L. c. 93A and c. 12, § 11 for compelling NECS to arbitrate.

Following an expedited evidentiary hearing, the district court held that NECS had properly terminated the Agreement, that there was no collective bargaining agreement presently in effect between it and the SEIU, and that the issue of the existence of the Agreement was not arbitrable. In a companion memorandum and order, the court dismissed NECS's complaint against the AAA on the ground that its decision to process SEIU's demand for arbitration was protected by arbitral immunity. NECS appeals from the latter ruling.

## DISCUSSION

■ The court of appeals applies a de novo standard of review to a district court's allowance of a motion to dismiss for failure to state a claim. *LaChapelle*, 142 F.3d at 509. Here, NECS maintains that the district court erred in applying the standard prescribed by Fed.R.Civ.P. 12(b)(6) and in holding that the AAA's decision to process the demand for arbitration was protected by arbitral immunity. Specifically, NECS argues that the trial court was obligated to take as true the facts pled in the complaint, which included the allegation that there was no agreement to arbitrate in effect at the relevant time. Without such an agreement, it contends, the AAA had no jurisdiction to process the demand for arbitration. And without jurisdiction, the AAA did not possess arbitral immunity.

The AAA argues that arbitral immunity protects its processing of a facially valid demand for arbitration pursuant to a collective bargaining agreement that names it as the arbitral agency. It maintains that the SEIU's demand for arbitration met

this standard, in that it (1) stated that NECS had "improperly terminated" the Agreement and "failed to meet with the union" in accordance with the prescribed grievance procedure, and (2) attached a copy of the Agreement, which explicitly provided for binding arbitration under the rules of the AAA. The AAA contends that it followed its own internal rules and procedures in billing the parties, notifying NECS of the demand, selecting an arbitrator, and scheduling a hearing date. Moreover, it argues that the system functioned appropriately in this case: upon NECS's complaint, the district court resolved the issue of the AAA's jurisdiction, and the AAA heeded the ensuing court order and stayed the arbitration proceedings.

█ Settled case law as well as federal policy encouraging labor arbitration favors the AAA's position. First, we reject NECS's assertion that the district court erroneously failed to comply with Fed. R.Civ.P. 12(b)(6) when it did not take as true all of NECS's allegations regarding the Agreement. NECS cannot preclude dismissal of its complaint under that rule simply by alleging that it had terminated the Agreement and had no collective bargaining agreement with the SEIU in effect at the time of the grievances. Such allegations are not assertions of fact, but rather involve legal issues and conclusions—indeed, the ultimate disputed issues presented in NECS's action against the SEIU. The court is not required to accept legal conclusions as true when considering a motion to dismiss. *See Abbott v. U.S.*, 144 F.3d 1, 2 (1st Cir.1998); 2A Moore's Federal Practice, § 12.34[1][b].[2]

█ Second, the district court correctly concluded that the AAA's decision to process the demand was protected by arbitral immunity. "Because an arbitrator's role is functionally equivalent to a judge's role, courts of appeals have uniformly ex-

tended judicial and quasi-judicial immunity to arbitrators." *Olson v. National Ass'n of Securities Dealers*, 85 F.3d 381, 382–83 (8th Cir.1996). As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants. *See id.* In proper circumstances, organizations that sponsor arbitrations, as well as arbitrators themselves, enjoy this immunity from civil liability. *See Honn v. National Ass'n of Securities Dealers, Inc.*, 182 F.3d 1014, 1017 (8th Cir.1999); *Hawkins v. National Ass'n of Securities Dealers Inc.*, 149 F.3d 330, 332 (5th Cir.1998); *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1208–11 (6th Cir. 1982).

█ A sponsoring organization's immunity extends to the administrative tasks it performs, insofar as these are integrally related to the arbitration. *See Austern v. Chicago Bd. Options Exchange, Inc.*, 898 F.2d 882, 886 (2d Cir.1990) (defective notice and improper selection of arbitration panel were sufficiently associated with adjudicative phase of arbitration to justify immunity). *See also Olson*, 85 F.3d at 383 (immunity protects "all acts within the scope of the arbitral process," even if arbitrator fails to follow its own internal rules). Here, the AAA's administrative acts of which NECS complains—including selecting an arbitrator, billing NECS for its services, and scheduling a hearing—were sufficiently related to the arbitration to be protected by immunity.

█ NECS points out that the district court determined that the AAA lacked jurisdiction or authority to adjudicate the dispute, and contends that therefore the AAA was not protected by arbitral immunity. Judicial immunity applies, however, unless there is a "clear absence" of jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349,

---

**2.** Allegations concerning the termination of the Agreement that were truly factual rather than conclusory must, of course, be taken as true for purposes of the motion to dismiss. For example, while the court must accept

NECS's allegation that it sent a letter stating that the Agreement was thereby terminated, it was not bound under these facts by its statements as to the legal effectiveness of the termination.

356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir.1989). We see no reason not to adopt the same parameter for arbitral immunity. *See Tamari v. Conrad*, 552 F.2d 778, 780–81 (7th Cir.1977) ("arbitral immunity should be extended to cases where the authority of an arbitrator to resolve a dispute is challenged"); *Durden v. Lockheed–Georgia Co.*, 1985 WL 56794 (N.D.Ga., June 18, 1985); *Raitport v. Provident Nat. Bank*, 451 F.Supp. 522, 527 (E.D.Pa.1978); Dennis R. Nolan & Roger I. Abrams, *Arbitral Immunity*, 11 Indus. Rel. L.J. 228, 239–40 (1989). The demand presented by the SEIU stated that the Agreement had been wrongfully terminated and attached the Agreement referencing the AAA as arbitrator. These papers were not so deficient on their face as to signal a "clear absence" of jurisdiction. That NECS ultimately secured a declaration that the Agreement had been effectively terminated does not mean that the SEIU's demand was not *facially* valid so that jurisdiction was clearly lacking.

Adopting NECS's position would require arbitral organizations, not courts or arbitrators, to themselves resolve what might well turn out to be significant threshold legal issues long before any hearing. In this case, the AAA would have had to decide not merely whether there was a facially valid demand, but the legal effect of the demand and whether an arbitrator in fact had jurisdiction to determine whether NECS's termination of the Agreement was effective. To make such a judgment, the AAA would have had to examine the breadth of the arbitration clause in the Agreement and the effectiveness of NECS's termination. NECS implies that the answers to these questions were so obvious as to enable the AAA to dispose of them routinely, saving NECS the time and trouble of litigating arbitrability in court. Yet it took a nine-page memorandum and order by the district court and a full opinion of this court to deal with the legal issues involved. We think it abundantly clear that the resolution of the arbitrability issue was not facially obvious. Forcing the AAA itself to preliminarily address potentially complex legal issues would not only impose an unwelcome burden, but would interfere with the organization's neutrality and likely add further cost and delay to the arbitral process. *See Ozark Air Lines, Inc. v. National Mediation Bd.*, 797 F.2d 557, 564 (8th Cir.1986). The course followed by the AAA forced the arbitrability issue to be decided either by an arbitrator or, at NECS's instance, the court—the two tribunals logically equipped to handle the issue.[3]

Not least, failure to extend immunity to the AAA in these circumstances could discourage it from sponsoring future arbitrations. *See Austern*, 898 F.2d at 886–87; *Tamari*, 552 F.2d at 781. Reluctance by the AAA or similar organizations to arrange arbitrations would impede the implementation of federal policy favoring arbitration of labor disputes. *See* 9 U.S.C. §§ 2, 3, 4; *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("Section 2 [of the Federal Arbitration Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."). Accordingly, we agree with the district court that the AAA is protected by arbitral immunity from liability for its actions in this matter.

Because we decide on the basis of immunity, there is no need to discuss the merits of NECS's claims under M.G.L. c. 93A and c. 12, § 11.

*Affirmed.*

---

**3.** In its brief, the AAA points out: "It would be no more appropriate for AAA, as a neutral administrative body, to make a determination of arbitrability than it would be for a court clerk's office to dismiss an action on jurisdictional grounds at the request of one of the parties, or without order of court."