Theodore S. BROWN and James Linnehan, et al., Plaintiffs, Appellants,

v.

Eli NEWBERGER, Children's Hospital, Inc., Amy C. Tischelman, Trial Court of Massachusetts, Department of social services, Eileen Kern, Sandra Fyfe, Christopher Salt, and Jack McCarthy, Jr., Defendants, Appellees.

No. 01–2410.

United States Court of Appeals, First Circuit.

Submitted April 18, 2002.

Decided May 30, 2002.

Barbara C. Johnson on brief for appellants Brown and Linnehan.

J. Walter Freiberg, III, Heather Dauler and Weston, Patrick, Willard & Redding on brief for appellee Kern. Thomas F. Reilly, Attorney General, Patrick J. Cassidy, Assistant Attorney General, on brief for appellees Trial Court of Massachusetts and Department of Social Services.

William P. Hurley and Cogavin & Waystack on brief for appellee McCarthy.

Rebecca J. Wilson, Sandra P. Criss and Peabody & Arnold LLP, on brief for appellee Fyfe.

Alexander G. Gray on brief for appellee Salt.

John J. Reardon, Kim S. Gainsboro and Hassan & Reardon, P.C., on brief for appellees Newberger, Tischelman and Children's Hospital, Inc.

Before LYNCH, Circuit Judge,
COFFIN and CYR, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

These consolidated appeals follow on the efforts of plaintiffs-appellants, Theodore Brown and James Linnehan, to acquire rights to visit their children. The children had been taken by their mothers during pending divorce and custody proceedings from Maine to Massachusetts, where the mothers obtained court orders barring the fathers from visitation on the basis of findings of sexual abuse.

Brown and Linnehan joined in filing a suit in the United States District Court for the District of Massachusetts against a dozen defendants, including the Trial Court of Massachusetts, the Massachusetts Department of Social Services (DSS), Children's Hospital, several doctors, and mental health and social workers.

The complaint asserted twelve claims against various defendants. Six invoke federal law: Count Two (Fourteenth Amendment, interference with parental rights); Counts Three and Four (Civil Rights Act, 42 U.S.C. § 1983); Count Eight (Civil RICO, 42 U.S.C. §§ 1961–68); and Counts Five and Six (unspecified federal and civil rights laws). Six claims assert violations of state laws: Count One (negligence); Count Seven (defamation); Count Nine (breach of contract); Counts Ten and Eleven (negligent and intentional infliction of emotional distress); and Count Twelve (Chapter 93A). The district court dismissed the federal-law claims with prejudice and the state-law claims without prejudice.

## I. *Factual Background*

Brown's complaint alleged that in 1996 his ex-wife hired defendant Eli Newberger, M.D., a pediatrician and Director of the Family Development Program of Children's Hospital, to conduct a sexual abuse evaluation of her children. This took place over a period in excess of seven months. Newberger's team included defendant Amy Tischelman, M.D., who interviewed Brown's children. Their joint report was submitted to Brown's ex-wife and was ultimately given to the court, which then denied visitation rights to Brown.

Linnehan's case presents a more complex series of events. In 1988, defendant Kern, a social worker employed by New Bedford Child and Family Services, met with the mother of Linnehan's child Brenden, and with Brenden. Developing a concern over the possibility of child abuse, Kern deemed herself a "mandatory reporter" under Massachusetts law, and submitted a report to DSS. This led to a court-ordered sexual abuse evaluation of Brenden by the Collis Center. Defendant Sandra Fyfe, a Collis Center employee, performed the evaluation. A second court-ordered evaluation was also done in 1988 by defendant Christopher Salt, who submitted a written report to the court and

updated it in 1992. Also in 1992, at the suggestion of Brenden's mother's attorney, defendant Newberger conducted an assessment spanning several months, and ultimately submitted his report to the court. In 1993, both Linnehan and Brenden's mother agreed that defendant McCarthy would serve as Brenden's therapist and would submit reports to the Probation Department of the court every six months. The period of such evaluation extended into 1999. During all this time, Linnehan continued to be denied visitation rights.

## II. *Discussion*

As we review the three voluminous volumes of appendices containing some but not all of the submissions by all the parties, the thirty-seven page opinion of the district court, and the multiple appellate briefs, we cannot escape the conclusion that all has been said that can be said. At the present juncture, this litigation has reached the point where dedication and commitment have outrun legal merit. Without intending any disrespect, therefore, we shall briefly indicate our reasons for affirming, without implying that they are the only grounds available.

### A. *Claims against the Massachusetts Trial Court and DSS*

■ The claims under 42 U.S.C. § 1983 fail because a state and its agencies are not "persons." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The claims based on the Fourteenth Amendment fail because there has been no unequivocal abrogation of the Commonwealth's Eleventh Amendment immunity. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55–56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Appellants having sued only state agencies,

not officials, there is no basis for invoking *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Nor is there any basis for claims that the state agencies violated state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119–21, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ On appeal, appellants launch a strenuous argument that Massachusetts has, from its beginning, waived its immunity from citizen suits through Articles 5 and 11 of its Declaration of Rights. Article 5 reads in part that "the several magistrates and officers of government ... are at all times accountable to [the people]." Article 11 proclaims merely that individuals "ought to find a certain remedy" for all injuries or wrongs.

We are not certain that this argument, although raised in plaintiffs' opposition to the state defendants' motion for judgment on the pleadings, continued to be pursued. Appellees Fyfe and Salt contend that it was not raised before the district court. The court in its opinion did not allude to it. In any event, the argument is transparently flawed. Article 5 does not speak of either the Commonwealth or its agencies as entities; the reference is to individuals. The language is so far removed from unequivocally indicating that citizens have a right to sue the state in state or federal court that it is not surprising that appellants have found no reference to the claim in any reported cases and concede that Article 5 is "alive, albeit ignored." The argument fails.

### B. *Civil RICO claims against all defendants*

■ These claims were not argued in appellants' main brief on appeal, appearing only in a reply brief. As we have held in the past, an issue raised only in a reply brief is forfeited. *See, e.g., County Motors*

*v. Gen. Motors Corp.*, 278 F.3d 40, 43 (1st Cir.2002); *N. Am. Specialty Ins. Co. v. Lapalme,* 258 F.3d 35, 45 (1st Cir.2001). In any event, as the district court noted, the references to telephone conversations and uses of the mails fail to meet the particularity requirements of Fed.R.Civ.P. 9(b). *See Ahmed v. Rosenblatt,* 118 F.3d 886 (1st Cir.1997).

### C. *Claims against Children's Hospital, Newberger, Tischelman, Kern, and McCarthy*

■ We dispose of these claims with a common holding that because all of these defendants were private actors, they cannot be subjected to Section 1983 liability as having acted under color of state law. We apply the familiar test first articulated in *Ponce v. Basketball Fed'n of Puerto Rico,* 760 F.2d 375 (1st Cir.1985), to determine if one can be considered a state actor: "(1) whether there was an elaborate financial or regulatory nexus between appellants and the government ... which compelled appellants to act as they did, (2) an assumption by appellants of a traditionally public function, or (3) a symbiotic relationship involving the sharing of profits." *Id.* at 377.

■ Appellants concede that the court did not ask Children's Hospital and Dr. Newberger to do anything. Instead, appellants claim that state action stemmed from the fact that Dr. Newberger knew that his reports would be used by the court. Clearly, the district court was correct in holding that mere knowledge of probable future use met none of the three tests. Likewise, Dr. Tischelman must also be accorded private actor status, because her involvement was merely that of a member of Newberger's team and the interviewer of Brown's younger children.

■ Defendant Kern's liability as a state actor is pressed on the basis that she filed a report of suspected sexual abuse of Brenden Linnehan with DSS. Mass. Gen. Laws ch. 119, § 51A, requires a wide variety of social and health workers to file such reports if they have reasonable cause to believe a child is suffering from sexual abuse. Both the failure to file reports and frivolous filings are punishable by fine. One required to file such a report is protected from criminal or civil liability. Within sixty days from receipt of such a report, DSS must notify the reporter of its determination of the nature, extent, and causes of injuries and the social services it intends to provide. While this kind of "mandatory reporting" goes somewhat beyond the cases dealing with the voluntary furnishing of information to the police, which we have considered in *Rivera–Ramos v. Roman,* 156 F.3d 276, 282 (1st Cir.1998), and *Roche v. John Hancock Mutual Life Insurance Co.,* 81 F.3d 249, 254 n. 2 (1st Cir.1996), we conclude that the reporting requirement under section 51A does not create the kind of regulatory nexus that could justify treating Kern as a state actor.

The specific action of Kern was merely to signal the need for DSS to look into the matter and decide for itself whether there was a problem and what to do about it. Nothing seems more counterintuitive to us than to reason that a statute which protects one who complies from civil or criminal actions under state law should be the vehicle for subjecting the actor to liability under federal law. Although this issue has, understandably, arisen only rarely in decided cases, we agree with the holdings in *Thomas v. Beth Israel Hospital Inc.,* 710 F.Supp. 935 (S.D.N.Y.1989), and *Haag v. Cuyahoga County,* 619 F.Supp. 262, 283 (N.D.Oh.1985), *aff'd,* 798 F.2d 1414 (6th Cir.1986) (filing a mandatory child abuse

report does not constitute state action).[1]

 Defendant McCarthy, earlier alleged to have been a court-appointed investigator by plaintiffs, was later emphatically characterized as a private individual by plaintiffs, who asserted that Brenden's parents had agreed that he was to be the child's therapist and report periodically to the court's Department of Probation. Appellants invoke state actor status, based on the action of McCarthy in filing the reports. In McCarthy's case, there is not even a statutory framework for such action, it being the product of agreement between private parties. Nor are any of the other determinants of state action implicated.

### D. Claims against Salt and Fyfe

 Appellants pose several arguments concerning these claims. The first is that neither Salt nor Fyfe was properly appointed. In the case of Salt, who appellants alleged was appointed by the court as an evaluator, the argument is that he was improperly appointed under Mass. Gen. Laws ch. 119, §§ 21, 24, which require the appointee to be qualified as an expert. Salt, the argument continues, was never so qualified. In Fyfe's case, the argument is that it was her employer, Collis Center, and not Fyfe, who was court appointed.

The essential fact is that both defendants were operating at the request of the court. They submitted their reports to the court, which accepted them, and considered them in its actions. We agree with the district court which found that "Salt was acting in close association with the judicial process" and that "Fyfe was indis-

putably acting to carry out a court order." In *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir.1993), we refused to consider a claim that a psychologist had investigated appellant's family "without express court authority and direction to do so," observing that "[t]he right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Id.* Were collateral and retrospective attacks on technical defects of court appointments permitted, the court's work in an already difficult litigation field would often be undone, with consequent uncertainty, delay, and frustration.

Viewing the functions performed by Salt and Fyfe, as we are required to do, *Cleavinger v. Saxner*, 474 U.S. 193, 201, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), we conclude that the information gathering, reporting, and recommending tasks of both are similar in nature and purpose to those of a guardian ad litem and qualify to confer absolute quasi-judicial immunity. *See Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989). Another argument made against both defendants is that they sacrificed whatever immunity they may have had by their actions violating plaintiffs' constitutional rights. Here, too, however, *Cok* makes a relevant comment about the nature of judicial immunity and therefore quasi-judicial immunity. We stated there that the entitlement is to "absolute immunity from civil liability for any normal and routine judicial act. . . . This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." *Id.* at 2. We therefore hold that Salt and Fyfe are enti-

---

**1.** Indeed, under 42 U.S.C. § 5106a(b)(iv) and its 1974 predecessor, 42 U.S.C. § 5106a(b)(1)(B), federal grants to states for child abuse programs require a state to include provisions for immunity from prosecution under state and local laws, such as Mass.

Gen. Laws ch. 119, § 51A. At least one court has ruled that Congress itself has impliedly created an immunity from section 1983 liability through this legislation. *Thomas v. Chadwick*, 274 Cal.Rptr. 128, 136–37, 224 Cal. App.3d 813, 824 (App.1990).

tled to the protective cloak of absolute quasi-judicial immunity.

### E. *Other Issues*

A residue of other issues remains, as to which we have only the briefest of comments. The district court conscientiously probed the complaint and, giving plaintiffs-appellants the benefit of doubt, reconstructed a conspiracy claim under 42 U.S.C. § 1985(3), which, however, was defective, lacking any identification of a cognizable class. This issue, however, has not been pursued on appeal and is forfeited.

Counts 5 and 6, as previously noted, seek to invoke unidentified federal and state civil rights laws. They do not survive even deferential analysis and are not pursued on appeal.

Appellants take issue with the district court's having removed a default judgment against defendant Newberger. We have reviewed the reasons advanced in Newberger's motion to remove default and cannot fault the district court's exercise of discretion in granting it. We could see very little delay and no discernible prejudice. *See Coon v. Grenier,* 867 F.2d 73, 78 (1st Cir.1989).

Finally, we further approve the dismissal of the state claims against all defendants except the Trial Court and DSS, without prejudice. The state claims against the Trial Court and DSS, as we have noted, must be dismissed with prejudice.

***Affirmed.***