# United States Court of Appeals
## For the First Circuit

Nos. 18-2057
     18-2181

GIOVANNI LANZA and MARIANTONIA LANZA,

Plaintiffs, Appellants,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY (FINRA),

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Selya, and Barron,
Circuit Judges.

Robert D. Loventhal on brief for appellants.
Ian D. Roffman, Melanie L. Todman, Nutter, McClennen & Fish LLP, and Terri L. Reicher, Office of General Counsel, on brief for appellee.

March 24, 2020

**SELYA**, **Circuit Judge**.   Entering their golden years, Giovanni and Mariantonia Lanza, a married couple, found themselves involved in a dispute with their quondam stockbroker over the handling of their brokerage accounts.   After submission of the dispute to the Financial Industry Regulatory Authority (FINRA) for arbitration, a panel of arbitrators summarily dismissed the Lanzas' claims.   Chafing at the lack of an explained decision, the Lanzas unsuccessfully sued FINRA in the federal district court. They now appeal.

In this court — as below — the Lanzas contend that the arbitrators' failure to issue an explained decision violated the covenant of good faith and fair dealing implied under Massachusetts law.   Concluding, as we do, that the Lanzas' complaint fails to state a plausible claim for breach of the implied covenant, we affirm.

## I. BACKGROUND

We briefly rehearse the events leading up to this appeal. Because the district court's dispositive ruling was on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we draw the facts from the complaint and its attachments.   See Katz v. Pershing, LLC, 672 F.3d 64, 69 (1st Cir. 2012).

The Lanzas are both retired professors.   FINRA is a private entity that monitors the relationship between financial services companies and consumers.   Of particular pertinence for

present purposes, FINRA's Office of Dispute Resolution (ODR) settles financial and business disputes through arbitrations administered pursuant to FINRA's bylaws, rules, and Code of Arbitration Procedure (the FINRA Code).

Beginning in 2006, the Lanzas maintained brokerage accounts with a securities firm, Ameriprise Financial Services, Inc. (Ameriprise). Richard Ewing, an Ameriprise broker, oversaw these accounts. The relationship soured in 2014, when the Lanzas came to believe their accounts had been mismanaged. They then terminated the relationship and sued Ameriprise and Ewing in the United States District Court for the District of Massachusetts.

This initial suit was short-lived. The Lanzas previously had agreed to resolve any dispute with Ameriprise through arbitration, and their suit came within the scope of the arbitration clause. Faced with this reality, the Lanzas consented to the dismissal of their suit, albeit without prejudice. They subsequently submitted their claims for arbitration by FINRA's ODR.[1] The Lanzas' claims comprised an array of tort and contract claims, as well as claims alleging violations of federal and state securities laws.

---

[1] The Lanzas originally sought arbitration only against Ewing and reached a tentative settlement through mediation. When Ewing refused to honor the terms of the settlement, the Lanzas reconfigured their arbitration claims to encompass both Ewing and Ameriprise.

When filing their claims, the Lanzas signed an arbitration submission agreement, which acknowledged that they were submitting their dispute for "arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure." They also acknowledged that they (or their representatives) had "read the procedures and rules of FINRA relating to arbitration" and agreed "to be bound by these procedures and rules."

Prior to the scheduled arbitration hearing, the Lanzas settled their claims against Ewing. As to their remaining claims against Ameriprise, they requested that the arbitrators issue an "explained decision" delineating the reasoning underlying any arbitral award. Ameriprise did not join this request.

In December of 2017, a panel of three arbitrators conducted a three-day hearing on the Lanzas' claims against Ameriprise. In due course, the panel issued a written decision summarily dismissing the Lanzas' claims. The panel stated only that the Lanzas had failed either to "sustain their burden of proving" any of their claims or to "establish any damages by any competent or credible evidence." The panel offered no further elucidation of its decision. Its refusal to issue an explained decision comported with FINRA Code Rule 12904(g)(1), which

- 4 -

requires FINRA arbitrators to issue such a decision only upon the joint request of all parties to the arbitration.[2]

After an unsuccessful attempt to secure the arbitrators' reasoning, the Lanzas again repaired to the federal district court and instituted a new proceeding: a breach-of-contract suit against FINRA. The Lanzas alleged that the arbitrators' failure to provide an explained decision amounted to a breach of contract on FINRA's part.[3] Specifically, they alleged a breach of the implied covenant of good faith and fair dealing inherent in every contract under state law. See, e.g., Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 683 (Mass. 2005).

As relevant here, FINRA moved to dismiss the complaint, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief could be granted. The district court granted FINRA's motion to dismiss on two independently sufficient grounds. First, it held that arbitral immunity protected FINRA from liability. See Lanza v. FINRA, 333 F. Supp. 3d 11, 16 (D. Mass. 2018). Second, it held that, in all events, the Lanzas had failed to state a

---

[2] The Lanzas' district court complaint alludes to FINRA Code Rule 13904, which applies only to industry disputes. Rule 12904, which otherwise is identical to Rule 13904, applies to consumer disputes. On appeal, the Lanzas refer only to Rule 12904, and we treat their earlier reference to Rule 13904 as a scrivener's error.

[3] Although the complaint is not a model of clarity, the contract upon which the Lanzas rely is apparently the arbitration submission agreement. FINRA and the Lanzas are among the parties to that agreement.

plausible claim for breach of the implied covenant of good faith and fair dealing. See id. at 16-18. The Lanzas moved for reconsideration and subsequently filed a notice of appeal. After the district court denied reconsideration, they filed a second notice of appeal.

## II. ANALYSIS

We review de novo a district court's decision to grant a motion to dismiss under Rule 12(b)(6). See González v. Vélez, 864 F.3d 45, 50 (1st Cir. 2017). In undertaking this review, "we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)). Generally, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint need not include exhaustive factual allegations, "it must nonetheless 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). If the factual allegations set forth in the complaint "are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Id.

- 6 -

When filing suit, the Lanzas invoked the district court's diversity jurisdiction.[4]  See 28 U.S.C. § 1332(a)(1). Accordingly, state law supplies the substantive rules of decision. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Zeigler v. Rater, 939 F.3d 385, 392 (1st Cir. 2019).  The district court — noting that the Lanzas lived in Massachusetts and that the arbitration took place there — reasonably assumed that Massachusetts law governed the Lanzas' breach of contract claim. See Lanza, 333 F. Supp. 3d at 16 n.4.  On appeal, the parties do not contest this choice of law.  Consequently, we accept the parties' implicit agreement that Massachusetts law controls.  See Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) (explaining that courts may eschew independent choice-of-law analysis and accept parties' reasonable agreement about which state's law governs).

Before us, the Lanzas pursue two lines of attack.  First, they assail the district court's conclusion that arbitral immunity shields FINRA from suit.  Second, they quarrel with the court's conclusion that their complaint fails to state a plausible claim for breach of the implied covenant of good faith and fair dealing.

---

[4] The record is less than precise as to the jurisdictional facts.  We are able to glean, though, that FINRA is incorporated in Delaware and is said to be a citizen of New York (allegedly "headquartered" in New York and/or Washington D.C.).  Since the Lanzas are apparently citizens of either Massachusetts or New Hampshire (they have homes in both places), diversity is complete.

- 7 -

We start with the Lanzas' contention that the district court erroneously permitted FINRA to take refuge in the doctrine of arbitral immunity. Because the role of an arbitrator is functionally equivalent to that of a judge, courts (including this court) consistently have extended quasi-judicial immunity to arbitrators and organizations that sponsor arbitrations. See, e.g., Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d 1155, 1158-60 (10th Cir. 2007); Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n, 312 F.3d 833, 843-44 (7th Cir. 2002); New Eng. Cleaning Servs., Inc. v. Am. Arbitration Ass'n, 199 F.3d 542, 545-46 (1st Cir. 1999); Olson v. Nat'l Ass'n of Sec. Dealers, 85 F.3d 381, 382-83 (8th Cir. 1996). The purpose of this immunity is to "protect decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants." New Eng. Cleaning Servs., 199 F.3d at 545.

In general terms, arbitral immunity covers "all acts within the scope of the arbitral process." Id. (quoting Olson, 85 F.3d at 383). A sponsoring entity's immunity ordinarily "extends to the administrative tasks it performs, insofar as these are integrally related to the arbitration." Id. Examples of tasks that we have recognized as "sufficiently related to the arbitration to be protected by immunity" include choosing an arbitrator, scheduling a hearing, and billing for services. Id.

- 8 -

Although the protective carapace created by the doctrine of arbitral immunity is sturdy, it is not impervious to all incursions. For example, arbitral immunity does not extend to actions taken in the absence of any colorable claim of jurisdiction. Cf. Nystedt, 700 F.3d at 31. So, too, we doubt that such immunity would afford shelter to an arbitrator who, say, decided a matter after accepting a bribe. Cf. 9 U.S.C. § 10 (providing that court may vacate arbitral award procured by fraud, corruption, partiality, or other misconduct on arbitrator's part). More to the point, arbitral immunity is an awkward fit in situations — like this one — in which it is alleged that arbitrators (or an entity that stands in the shoes of arbitrators) have broken a contractual promise. Cf. Caudle v. Am. Arbitration Ass'n, 230 F.3d 920, 922 (7th Cir. 2000) (suggesting that issue may be whether arbitrators and organizing bodies are real parties in interest, not whether immunity applies). Here, however, we need not pursue the limits of the doctrine of arbitral immunity because the district court has identified an alternative basis for dismissing the underlying action — a basis that, by itself, suffices to resolve this appeal.

This brings us to the district court's alternative holding: that even apart from arbitral immunity, the complaint failed to state a claim upon which relief could be granted. See Lanza, 333 F. Supp. 3d at 16-17. The baseline is familiar. Under

- 9 -

Massachusetts law, every contract "is subject, to some extent, to an implied covenant of good faith and fair dealing." Ayash, 822 N.E.2d at 683. This implied covenant provides "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth., 95 N.E.3d 547, 560 (Mass. 2018) (quoting Weiler v. PortfolioScope, Inc., 12 N.E.3d 354, 361 (Mass. 2014)). A breach of the implied covenant "occurs when one party violates the reasonable expectations of the other." Id. (quoting Weiler, 12 N.E.3d at 362).

It is clear beyond hope of contradiction that the implied covenant of good faith and fair dealing "does not create rights or duties beyond those the parties agreed to when they entered into the contract." Bos. Med. Ctr. Corp. v. Sec'y of Exec. Office of Health & Human Servs., 974 N.E.2d 1114, 1126-27 (Mass. 2012) (quoting Curtis v. Herb Chambers I-95, Inc., 940 N.E.2d 413, 419 (Mass. 2011)). Similarly, it is clear that a party cannot weaponize the implied covenant in a manner that contradicts the plain terms of a contract. See id. (finding no breach of implied covenant when contract specified reimbursement rates and defendant refused to pay more).

In the case at hand, the Lanzas concede — as they must — that FINRA Code Rule 12904(g)(1) requires an arbitrator to render

- 10 -

an explained decision only upon the <u>joint</u> request of all parties. Attempting to avoid the obvious implications of this rule, the Lanzas pivot to Rule 12904(f). The latter rule provides that an arbitration award "<u>may</u> contain a rationale underlying the award." This rule, the Lanzas say, engendered a reasonable expectation that the arbitrators would exercise their discretion to issue an explained decision. Elsewise, they would be unable to understand the basis for (and, by extension, appeal) the award.[5]

We conclude that these allegations are insufficient to state a plausible claim that FINRA breached the implied covenant. Rule 12904(f) must be read as part of the FINRA rules as a whole, not in some sort of splendid isolation. And at any rate, the word "may" is permissive, not mandatory. To cinch the matter, any expectation that the arbitrators would issue an explained decision upon the Lanzas' unilateral request was unreasonable in light of the express provisions of the FINRA Code. Although Rule 12904(f) affords arbitrators discretion to issue an explained decision at the request of a single party, Rule 12904(g)(1) makes it abundantly

_____

[5] The Lanzas' argument that the arbitrators' failure to render a reasoned decision resulted in a "complete loss of [their] statutory appellate rights" is incorrect. Nothing in either the Federal Arbitration Act or Massachusetts law prevents the Lanzas from seeking judicial review of FINRA's arbitration award notwithstanding the absence of an explained decision. <u>See</u> Federal Arbitration Act, 9 U.S.C. §§ 1-16; Uniform Arbitration Act for Commercial Disputes, Mass. Gen. Laws ch. 251, §§ 1-19.

clear that they are <u>required</u> to do so if — and only if — an explained decision is requested by all parties.

Refined to bare essence, the Lanzas' argument is essentially an attempt to rewrite the FINRA rules and add a new contractual obligation:  the duty to issue an explained decision upon the unilateral request of a single party.  When they executed the arbitration submission agreement, though, the Lanzas acknowledged that the FINRA Code and the accompanying rules were part and parcel of the agreement to arbitrate.  The construction of the arbitration agreement espoused by the Lanzas directly contradicts the express terms of Rule 12904(g)(1) and, therefore, exceeds the reach of the implied covenant.  <u>See</u> <u>Bos. Med. Ctr.</u>, 974 N.E.2d at 1126-27.

To say more would be pointless.  The scope of the implied covenant of good faith and fair dealing "is only as broad as the contract that governs the particular relationship."  <u>Ayash</u>, 822 N.E.2d at 684.  Here, the Lanzas agreed to be bound by the FINRA Code, and that Code requires an explained decision only upon the joint request of all parties.[6]  Consequently, the Lanzas have not

---

[6] For the sake of completeness, we add that the result — a summary decision in an arbitration proceeding — is not out of the ordinary.  Absent a statutory directive or a binding contractual commitment — and none pertain here — it is typical that arbitrators are not required to furnish a reasoned decision for an arbitration award.  <u>See</u> <u>United Steelworkers</u> v. <u>Enter. Wheel & Car Corp.</u>, 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation . . . to give their reasons for an award."); <u>Zayas</u> v. <u>Bacardi Corp.</u>, 524

- 12 -

plausibly alleged a breach of the implied covenant, and the district court appropriately dismissed their complaint for failure to state a claim under Rule 12(b)(6).

**III. CONCLUSION**

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**Affirmed.**

---

F.3d 65, 70 (1st Cir. 2008) ("Although arbitrators frequently elect to explain their decisions in written opinions, they are under no compulsion to do so.").